# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PAULA A. FERGUSON,

      Plaintiff,

v.                                                                                   CIV 18-1055 KBM

ANDREW M. SAUL,[1]
Commissioner of Social
Security Administration,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 17*), filed on March 28, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

**I.**     **Procedural History**

On February 3, 2015, Ms. Paula A. Ferguson ("Plaintiff") filed applications with the Social Security Administration for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental

---

[1] Andrew Saul was confirmed as Commissioner of Social Security on June 17, 2019 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

Security Income under Title XVI of the SSA. Administrative Record[2] (AR) at 182. Plaintiff alleged a disability onset date of August 23, 2012. AR at 182. Her DIB claim was denied because she had not worked long enough to be eligible for DIB, and Plaintiff did not seek reconsideration of that denial. AR at 105-07. As for her SSI application, Disability Determination Services determined that she was not disabled both initially (AR at 109) and on reconsideration (AR at 116). She then requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her application. AR at 122-23.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 31-79. ALJ Cole Gerstner issued an unfavorable decision on October 27, 2017. AR at 12-23. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 179), which the Council denied on September 11, 2018 (AR at 1). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.  Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[2] Document 12-1 comprises the sealed Administrative Record. *See Doc. 12-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

2

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process here, ALJ Gerstner found that Plaintiff "has not engaged in substantial gainful activity since February 3, 2015, the application date." AR at 14 (citing 20 C.F.R. § 416.971). At Step Two, he concluded that Plaintiff had the following severe impairments: depression, anxiety, and degenerative disc disease. AR at 14 (citing 20 C.F.R. § 416.920). The ALJ also noted that there were "references to other isolated conditions," but he found that they did not impose more than a minimal

restriction on Plaintiff's ability to perform basic work activities. AR at 14-15.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 15 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). At Step Four, he found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR at 17. After considering the evidence of record, the ALJ determined that Plaintiff:

> ha[d] the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) with further limitations as follows. The claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; has unlimited pushing and/or pulling. She is limited to occasionally climbing ramps and stairs; occasionally climbing ladders, ropes and scaffolds; and occasional balancing, stooping, kneeling, crouching and crawling. She can occasionally work at unprotected heights and around moving mechanical parts. Mentally, she is limited to performing simple, routine and repetitive tasks. In addition to normal breaks, time off task includes ten percent of time in an eight-hour workday.

AR at 16. The ALJ determined that Plaintiff had "no past relevant work." AR at 21. But, at Step Five, he concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR at 22 (citing 20 C.F.R. §§ 416.969, 416.969(a)). Ultimately, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from February 3, 2015, through the date of his decision. AR at 22 (citing 20 C.F.R. § 416.920(g)).

4

**III.    Legal Standard**

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

**IV.    Discussion**

Plaintiff contends that the following issues require reversal: (1) the ALJ

improperly weighed the opinion of evaluating neuropsychologist Dr. Koltuska-Haskin;
(2) the ALJ's RFC is not supported by substantial evidence because Plaintiff's statements of pain were not considered in accordance with the dictates of *Luna v. Bowen*, 834 F.3d 161 (10th Cir. 1987), SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017), or SSR 96-8p, 1996 WL 374184 (July 2, 1996); and (3) the ALJ's Step-Five finding was not based on substantial evidence. *Doc. 17* at 1.

### A. The ALJ properly weighed the opinion of evaluating neuropsychologist Dr. Barbara Koltuska-Haskin.

First, Plaintiff maintains that ALJ Gerstner included only "a cursory discussion of the findings of Dr. Koltuska-Haskin," a consultative examining neuropsychologist. *Doc. 17* at 12 (citing AR at 20). She characterizes the ALJ's discussion of Dr. Koltuska-Haskin's opinion as "a fragment of an in-depth opinion based on an extensive evaluation including multiple tests." *Id.* (citing AR at 20, 724-31). Acknowledging that the ALJ gave Dr. Koltuska-Haskin's opinion only "partial weight," Plaintiff submits that it is "unclear to what, exactly, he was assigning the weight." *Id.* at 13 n.8, 15 (citing AR at 20). Specifically, Plaintiff identifies certain opinions of Dr. Koltuska-Haskin, which she insists the ALJ omitted: her opinion that Plaintiff's "overall clinical presentation indicates some cognitive problems primarily in the areas of executive functioning, attention/ concentration and nonverbal processing speed" and her opinion that "there is Chronic and Severe Depressive Disorder in [Plaintiff's] clinical picture." *Id.* at 12 (citing AR at 730). Plaintiff maintains that the ALJ failed to provide sufficiently specific or legitimate reasons for not incorporating all of the limitations found by Dr. Koltuska-Haskin.

An ALJ's findings must be sufficiently specific to allow for meaningful review. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Indeed, if an ALJ's decision

is not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Moreover, an ALJ must provide specific, legitimate reasons for rejecting an examining source opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

Yet, Plaintiff contends that ALJ Gerstner merely "lifted a partial sentence from Dr. Koltuska-Haskin's report and appeared to accord the entire evaluation 'partial weight[,]' stating that it showed 'limitations that were at most moderate.'" *See id.* at 12 (quoting AR 20). Plaintiff surmises that the ALJ dismissed portions of Dr. Koltuska-Haskin's opinion on the basis that "the opined limitations were merely moderate." *Doc. 17* at 12. The Court's reading of the ALJ's rationale for discounting Dr. Koltuska-Haskin's opinion is slightly different. The portion of the ALJ's opinion to which Plaintiff refers reads as follows:

> Barbara Koltuska-Haskin, Ph.D. performed a neuropsychological evaluation in April 2017 and stated that the claimant "has some difficulty initiating and completing a goal-oriented behavior and she has some difficulty with the entire task of determining what is to be done, formulating an approach for doing that, and then monitoring her behavior to be certain that she has solved the problem appropriately." This opinion was given partial weight as Dr. Koltuska-Haskin's testing showed limitations that were at most moderate.

AR at 20 (internal citations omitted). Under the Court's reading, the ALJ found a conflict between Dr. Koltuska-Haskin's test results, which showed moderate limitations at most, and her opined limitations, which were more significant.

Critically, the ALJ offered additional, more specific explanation elsewhere in his decision concerning his evaluation of Dr. Koltuska-Haskin's opinion. He explained that Dr. Koltuska-Haskin had "performed a number of tests including a WAIS-IV test in which

7

the claimant was well within the average range in all domains." AR at 18. Yet, the ALJ explained that, in contrast, her "executive function yielded variable results that were, as noted by Dr. Koltuska-Haskin, inconsistent with her WAIS-IV results." AR at 18 (citing AR at 728). Then, the ALJ reiterated that Dr. Koltuska-Haskin's "testing showed inconsistent results between the WAIS-IV executive function testing indicating that the claimant has normal, even superior cognitive functioning but her abilities to make judgments are impaired." AR at 19. Elsewhere in his opinion, when considering Plaintiff's ability to understand, remember, and apply information, the ALJ remarked that Dr. Koltuska-Haskin "performed a number of tests including a thorough WAIS-IV finding the claimant's ability to learn new information was well within the average range." AR at 15 (citing AR at 725-27).

    Having reviewed Dr. Koltuska-Haskin's report, the Court is able to follow the rationale offered by the ALJ for rejecting these portions of her opinion. First, he found her report internally inconsistent, a criticism the Court finds to be legitimate. Plaintiff did perform in the average to above average range in the vast majority of areas on which she was tested by Dr. Koltuska-Haskin. For example, on the WAIS-IV, the test specifically referenced by the ALJ, Plaintiff had an **above average** level of information about the world around her as well as **above average** visual-spatial skills, nonverbal reasoning skills, and arithmetic computation skills. AR at 727. She received **average to high average** scores in Verbal Comprehension, Perceptual Reasoning, and Working Memory. AR at 727. She received **average scores** in abstract thinking on verbal material, vocabulary, ability to analyze and synthesize complex visual stimuli, and

8

passive auditory attention span.[3] AR at 727. She performed in the **low average** range in only one area: Processing Speed. AR at 727. In conjunction with the WAIS-IV scores, Dr. Koltuska-Haskin remarked that Plaintiff "is an intelligent lady." AR at 727. In contrast, when reporting the results of a different test, the WCST, Dr. Koltuska-Haskin opined that Plaintiff has "defective judgment and capacity for abstraction." AR at 728. The incongruity between the test results as reported by Dr. Koltuska-Haskin is significant, and the Court considers it to be a legitimate reason for the ALJ to discount Dr. Koltuska-Haskin's opinion as to executive functioning.

Additionally, the ALJ cited to Dr. Koltuska-Haskin's report and noted an opinion therein that Plaintiff had difficulty maintaining focus and concentration. AR at 19 (citing the portion of Dr. Koltuska-Haskin's report found at AR at 725). But, as the ALJ went on to explain, physical therapy records suggested that Plaintiff did *not* have difficulty maintaining focus and concentration during evaluations. AR at 19 (citing AR at 612, 620, 650). In other words, the ALJ found Dr. Koltuska-Haskin's opinion to be inconsistent with the record as a whole. This too is a legitimate reason to discount Dr. Koltuska-Haskin's opinion concerning Plaintiff's focus and concentration, particularly

---

[3] In addition, Plaintiff received a **perfect** score (30/30) on the Mini-Mental State Exam, "revealing grossly intact cognitive functioning." AR at 726. On the Intelligence, Language Functioning, and Perceptual Organization Abilities test, she received **average** scores on Verbal Comprehension, Perceptual Reasoning, Working Memory, and Full Scale IQ. She received a **low average** score only in the area of Process Speed. AR at 726. With regard to Learning and Memory, Plaintiff performed in the **average to high average** range on the Wechsler Memory Scale-IV FA. AR at 726. She received scores in the **high average** range for auditory memory, visual working memory, immediate memory, and delayed recall. AR at 727. She received scores in the average range for visual memory and for auditory working memory. AR at 728. Plaintiff's performance on the WCST for Tasks of Concept Learning, Set Shifting, and Response Inhibition was in the **average range**; however, she demonstrated a **below average** ability to exercise mental and behavior flexibility within problem solving. AR at 728.

9

where the record showed that she had never alleged mental limitations or sought treatment for them until late in the administrative process. *See* AR at 19; *see also* AR at 650 (characterizing Plaintiff's attention and concentration as "normal").

Defendant argues that the ALJ limited Plaintiff "to what amounts to unskilled work, involving simple, routine, repetitive tasks," which he maintains involves only "a 'routine' work setting, simple instructions and tasks, and little to no judgment, and . . . does not require significant concentration or paying attention for more than two hours at a time (in between normal breaks)." *Doc. 19* at 12. Plaintiff, in contrast, insists that the ALJ's limitation to "simple, routine and repetitive tasks" failed to account for certain limitations opined by Dr. Koltuska-Haskin related to her impaired executive functioning, including the ability to sustain an ordinary routine without special supervision, to work in coordination or proximity to others without being distracted by them, or to respond appropriately to changes in the workplace. *Doc. 17* at 14 (citing AR at 16.) However, as explained above, the ALJ provided a specific, legitimate reason for rejecting Dr. Koltuska-Haskin's opinions regarding Plaintiff's executive functioning. Beyond those skills Plaintiff associates with executive functioning, she does not identify additional limitations found by Dr. Koltuska-Haskin for which the ALJ did not account. Consequently, the Court concludes that the ALJ reasonably discounted the opinion of Dr. Koltuska-Haskin and offered a satisfactory explanation for so doing. Plaintiff's motion should be denied on this first ground.

    **B.    The ALJ Properly Considered Plaintiff's Reports of Pain, and his RFC is Supported by Substantial Evidence.**

Plaintiff next alleges that ALJ Gerstner failed to adequately consider her subjective complaints of pain according to *Luna*, SSR 96-8p, and SSR 16-3p. *Doc. 17* at

16. She insists that, had the ALJ properly credited her complaints of pain based upon the objective and subjective medical evidence, her RFC would have been more restrictive.

SSR 16-3p, which is consistent with the Tenth Circuit's decision in *Luna*, clarifies the process an ALJ must use when evaluating the intensity and persistence of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *2; *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (noting that the Tenth Circuit's approach in *Luna* "is consistent with SSR 16-3p"). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.* Additionally, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § 416.929(c)(3), which include:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

Here, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 416.929 and SSR 16-3p." AR at 16. He summarized Plaintiff's testimony and self-reports regarding the pain and symptoms she experiences due to her various impairments. *See* AR at 17. And he went on to thoroughly review the evidence of record, discussing medical imaging results, physical examination findings, neuropsychological test results, and the treatments administered. *See* AR at 17-19. Nevertheless, he concluded that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 17. Indeed, he indicated that Plaintiff's "allegations [were] only moderately persuasive and only partially consistent with the evidence." AR at 19.

More particularly, acknowledging that Plaintiff alleged "very serious limitations such as not being able to hardly [bear] any weight and needing to change positions constantly," the ALJ determined that such severe limitations were simply not reflected in the medical records. AR at 19. In support, he highlighted conflicts between Plaintiff's statements and the medical evidence. *See* AR at 16-23. For example, although Plaintiff attributed much of her pain to a 2012 motor vehicle accident, he noted that she "had very little treatment or complaints at that time." AR at 19. Despite alleging daily

12

headaches, an active blood clot, and severe back pain, the ALJ observed that, in 2015, Plaintiff reported an absence of headaches for at least a three-month period, a resolved blood clot, and improved back pain. AR at 17. The ALJ also referenced Plaintiff's 2017 reports that aquatic therapy had resulted in "70% improvement." AR at 18. Additionally, he explained that while there was testimony that Plaintiff was more functional before her accident, her work history showed that, despite holding a college degree, she had "performed mostly if not only temporary and sporadic work." AR at 19. He even proposed that Plaintiff may have been reporting symptoms of depression "for the purpose of getting disability," citing to a treatment record in which Plaintiff stated that she did not know if she was depressed but that her "attorney thinks so" and noting that Plaintiff's reports were not made until almost the time of the *de novo* hearing. AR at 19 (citing AR at 745). The ALJ also referenced a discrepancy between certain mental health treatment notes, which indicated that Plaintiff had difficulty maintaining focus and concentration, and her physical therapy records, which indicated otherwise. AR at 19 (citing AR at 612, 620, 650, 725, 745, 757).

Plaintiff argues that if the ALJ had properly considered her complaints of pain in light of the objective and subjective evidence, "he would have found that [she] was **not** able to perform the RFC as she cannot sit and walk and/or stand long periods." *Doc. 17* at 19. The Commissioner, on the other hand, argues that the ALJ reasonably determined that Plaintiff's allegations of disabling symptoms and pain were not consistent with the other evidence of record. *Doc. 19* at 8. The Court agrees with the Commissioner and finds that the ALJ's determination regarding Plaintiff's subjective

complaints is supported by substantial evidence and was a product of his application of the appropriate factors. Specifically, the ALJ discussed:

<u>Daily activities</u>: Although the ALJ's discussion of Plaintiff's daily activities was somewhat sparse, he did discuss testimony by Plaintiff's daughter that she helps her mother with driving, going to the grocery store, cooking, cleaning and laundry, as well as testimony from Plaintiff's mother that Plaintiff's limitations were physical and not mental. AR at 21.

<u>The location, duration, frequency, and intensity of pain or other symptoms</u>: The ALJ reviewed Plaintiff's allegations of pain and other symptoms. He noted that she characterized her spine injury as her most severe impairment, and he recounted her testimony that the injury causes chronic pain in her neck and lower back, which radiates to her left leg. AR at 17. He summarized Plaintiff's testimony regarding a dislocated left shoulder, blood clots, nerve damage in her left upper extremity, daily headaches, arthritis in her knee, depression, and anxiety. AR at 17. He recounted Plaintiff's testimony that her pain made it necessary to frequently change positions and left her unable to bend at the waist or unscrew a jar. AR at 17. Finally, despite treatment records he considered to be contradictory, the ALJ observed Plaintiff's allegations of "very serious limitations such as not being able to hardly [bear] any weight and needing to change positions constantly." AR at 19.

<u>The type, dosage, effectiveness, and side effects of any medication</u>: As to medication, the ALJ noted that in 2015, despite complaints of pain in her left leg and lower back aggravated by bending and twisting, Plaintiff "was not taking medication and was not interested in taking medication." AR at 17 (citing AR at Ex. 501). He further noted that

the "attending physician tried gabapentin but discontinued the prescription after the claimant reported negative gastrointestinal reaction." AR at 17 (citing AR at 506-07).

<u>Treatment other than medication</u>: The ALJ explained that following Plaintiff's 2012 motor vehicle accident and subsequent medical records containing "little or no mention of back pain," Plaintiff "resumed treatment with a chiropractor on December 19, 2014." AR at 17 (citing AR at 388). The ALJ discussed the treatment notes from Plaintiff's physical therapy sessions, which she commenced in June 2015. AR at 17-18 (citing AR at 528-700). He emphasized that these records indicated that, at discharge, Plaintiff was "much improved with ambulation." AR at 19 (citing AR at 530). The ALJ observed that that after enjoying "70% improvement" from aquatic therapy, Plaintiff "declined land therapeutic exercises and manual therapy" and began "to transition to community aquatics." AR at 18 (citing AR at 700). He recounted Plaintiff's hearing testimony that she continues aquatic therapy on her own. AR at 18. The ALJ explained that Plaintiff also began mental health therapy with Solveig Maerki LPCC in March 2017, apparently at the suggestion of her attorney. AR at 18 (citing AR at 745). Finally, the ALJ mentioned Plaintiff's joint injection treatment, which she received in February and September of 2016. AR at 18 (citing AR at 628-29, 646-47, 669).

<u>Measures Plaintiff uses to relieve pain and symptoms</u>: The ALJ noted a general reluctance by Plaintiff to see doctors or to pursue treatment. AR at 19. While he explained that Plaintiff did not appear to have ongoing treatment for physical symptoms, he acknowledged that she reported engaging in independent aquatic therapy. AR at 18. Additionally, he noted Plaintiff's allegation that she changes positions constantly to relieve pain. AR at 19.

While the ALJ's discussion of these factors was not perfect – he could have, perhaps, offered a more in-depth discussion of Plaintiff's activities of daily living or elaborated further on her complaints of pain – there is simply no requirement that the factors be considered in a "formalistic way." *Brownrigg*, 688 F. App'x at 546 (citing *Keyes-Zachary*, 695 F.3d at 1167). The Court is satisfied that the ALJ conducted a thorough review of the objective and subjective evidence and specifically examined many of the necessary factors in considering Plaintiff's subjective reports of her symptoms. The ALJ failed to assess a more restrictive RFC, not because he neglected to consider allegations by Plaintiff that pain left her unable to sit or stand for long periods, but because he found such allegations unsupported by the record. Ultimately, the Court finds the ALJ's analysis of Plaintiff's subjective symptoms adequate under *Luna*, SSR 96-8p, and SSR 16-3p. The Court therefore declines to reverse the ALJ's decision on this issue as well.

### C. The ALJ's Step-Five Finding was Based on Substantial Evidence.

At Step Five, the ALJ relied on the VE's testimony to find that Plaintiff could perform work as a cleaner/polisher, cashier, sales attendant, and silver wrapper. AR at 22. Plaintiff argues that the ALJ committed harmful error by failing to resolve conflicts between the VE's testimony and the DOT. *Doc. 17* at 19-20.

In his decision, the ALJ recited the oft included statement: "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and persuasive." AR at 22; *see also Sida v. Berryhill*, Civ. No. 17-0638 JB/GJF, Doc. 33, at 20-21 (D.N.M. Oct. 29, 2018); *Quezada v. Berryhill*, Civ. No. 17cv1163 LF, Doc. 25, at 12 (D.N.M. March

28, 2019). But SSR 00-4p imposes upon an ALJ "an affirmative responsibility to ask . . . the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Indeed, before an ALJ may rely on VE testimony as substantial evidence to support a determination of nondisability, he must ask the expert to explain any conflicts between his findings and the DOT relating to any "occupational information." *Hackett*, 395 F.3d at 1175 (citing *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704). Plaintiff insists that, here, the ALJ failed to ask regarding any such conflicts, and the Commissioner does not contend otherwise.

Even so, the failure to inquire about any such conflicts is not reversible error so long as there is no apparent unresolved conflict between the VE's testimony and the DOT. SSR 00-4p, 2000 WL 1898704, at *2; *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony . . . and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts."). Accordingly, the Court must consider whether there remains such an apparent unresolved conflict.

Plaintiff notes that the ALJ included in his hypothetical to the VE a limitation of being off task for 15 percent of the day. AR at 73. A review of the hearing transcript reveals that the VE testified initially that he believed spending *more than 15 percent* of time off task would preclude any jobs. AR at 74 ("That would be the very outset, Judge. Anything over 15% I don't think there would be jobs."). Later, the ALJ posed the following to the VE: "I think [the VE] said 15% or more is not going to be tolerated. Is

17

that right, sir?" AR at 77-78. The VE responded, "That's correct, Judge." AR at 78. On the other hand, when the ALJ asked whether being off task 14 percent of the time, as opposed to 15 percent of the time, was tolerable, the VE responded, "Yes sir. It's splitting hairs, but yes." AR at 77. Thus, regardless of the VE's somewhat equivocal testimony as to whether jobs were eliminated when a claimant is off task *precisely 15 percent* of the time, he clearly testified that being off task *14 percent of the time or less* would be tolerable.

In his RFC finding, the ALJ included a limitation of being off task *10 percent* of the time in addition to regular breaks. AR at 16. Plaintiff submits that in doing so he committed reversible error, because he failed to ask the VE "to posit as to how being off task 10 percent of an 8-hour day, in addition to regular breaks, would erode the occupational base of the jobs suggested." *Doc. 17* at 19 (citing AR at 70-79). However, notably, Plaintiff does not identify any provision of the DOT with which the VE's testimony conflicts.

Ultimately, the Court disagrees that there is an apparent unresolved conflict between the VE's testimony and the DOT. Likewise, the Court finds no reversible error in the ALJ's failure to ask the VE if his evidence conflicts with the information provided in the DOT. Finally, where the VE clearly testified that being off task 14 percent of the time or less was tolerable, and the ALJ's RFC finding limited Plaintiff to jobs in which he could be off task 10 percent of the time, the Court finds the ALJ's Step Five finding to be supported by substantial evidence. The Court will deny Plaintiff's motion as to this third and final issue.

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (*Doc. 17*) is **denied**.

**IT IS FURTHER ORDERED** that the Court will enter concurrently herewith a Final Order, pursuant to Rule 58 of the Federal Rules of Civil Procedure, affirming the decision of the Commissioner and dismissing this case with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent